| | | |
|---|---|---|
| **EVERETTE L. VANHOY** and **LUCILLE B VANHOY**, | § § § | CIVIL ACTION NO. _____ |
| Plaintiffs, | § § | CIVIL ACTION COMPLAINT |
| v. | § § | |
| **AMERICAN INTERNATIONAL INDUSTRIES**; | § § § | JURY TRIAL DEMANDED |
| **CBS CORPORATION**, f/k/a VIACOM, INC., sued as successor-by-merger to CBS CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to BF STURTEVANT; | § § § § § § § § | |
| **CERTAINTEED CORPORATION**; | § § | |
| **FOSTER WHEELER ENERGY CORPORATION**; | § § § | |
| **HONEYWELL INTERNATIONAL, INC.**, f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION; | § § § § § | |
| **METROPOLITAN LIFE INSURANCE COMPANY**, a wholly-owned subsidiary of METLIFE INC.; | § § § | |
| **PFIZER, INC.**; | § § | |
| **R.T. VANDERBILT HOLDING COMPANY, INC.**, sued individually and as successor-in-interest to R.T. VANDERBILT COMPANY, INC.; | § § § § | |
| **UNION CARBIDE CORPORATION**; | § § § § § | |

| | |
|---|---|
| **VANDERBILT MINERALS, LLC**, f/k/a RT VANDERBILT COMPANY INC., individually and as successor-in-interest to INTERNATIONAL TALC CO.; | § § § § § |
| **VELAN VALVE CORP.**; | § § |
| **WEIR VALVES & CONTROLS USA, INC.**, individually and as successor-in-interest to ATWOOD & MORRILL CO., INC.; and | § § § § |
| **WHITTAKER, CLARK & DANIELS, INC.** | § § § |
| Defendants. | § § § |

# CIVIL ACTION COMPLAINT

PLAINTIFFS, **Everette L. Vanhoy** and **Lucille B. Vanhoy**, sue the above-named Defendants for compensatory and punitive damages, by and through his attorneys, Wallace and Graham, PA, and hereby brings this Civil Action Complaint, and alleges:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over the parties pursuant to 28 USC §1332 because the amount in controversy exceeds Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, and is between citizens of different states.

2. This Court has personal jurisdiction over the Defendants because Defendants have a substantial connection to the State of North Carolina and have purposefully availed themselves of the privilege of conducting business in this State. Plaintiffs' claims arise out of Defendants' business activities conducted within this State and/or directed at this State, including the sale or supply of asbestos, asbestos-containing products, and/or asbestos-containing talc, within this State.

3. Plaintiffs' claims against the Defendant product manufacturers and sellers arise out of Defendants' efforts to serve directly or indirectly the market for their asbestos, asbestos-

2

containing products, and/or asbestos-containing talc in this State, either through direct sales or through utilizing an established distribution channel with the expectation that their products and/or talc would be purchased and/or used within North Carolina.

4. All of the named Defendants are foreign corporations whose substantial and/or systematic business in North Carolina caused injury to Plaintiffs in this State, which subjects them to the jurisdiction of the North Carolina courts pursuant to the North Carolina Long-Arm Statute and the United States Constitution.

5. Pursuant to 28 USC §1391 (2), venue is proper in this judicial district because a substantial part of the events or omissions occurred in North Carolina.

## PARTIES

6. The Plaintiffs, Everette L. Vanhoy and Lucille B. Vanhoy, are citizens of the State of North Carolina where Everette Vanhoy was exposed to asbestos during the course of his career.

7. Defendant, **AMERICAN INTERNATIONAL INDUSTRIES** was and is a California corporation with its principal place of business in California. At all times material hereto, AMERICAN INTERNATIONAL INDUSTRIES asbestos-containing products, including asbestos-contaminated talc products requiring or calling for the use of asbestos that were manufactured, sold or distributed by the Defendant or their predecessors-in-interest for use as cosmetic talcum body powders including, but not limited to, asbestos-containing Clubman talc products and Jeris talc products. Plaintiff's claims against AMERICAN INTERNATIONAL INDUSTRIES arise out of this Defendant's business activities in the State of North Carolina.

8. Defendant, **CBS CORPORATION**, f/k/a VIACOM, INC., sued as successor-by-merger to CBS CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to BF STURTEVANT, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material

3

hereto, CBS CORPORATION, f/k/a VIACOM, INC., sued as successor-by-merger to CBS CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to BF STURTEVANT mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, Westinghouse blowers and turbines as well as BF STURTEVENT blowers. Plaintiffs' claims against CBS CORPORATION, f/k/a VIACOM, INC., sued as successor-by-merger to CBS CORPORATION, f/k/a WESTINGHOUSE ELECTRIC CORPORATION and also as successor-in-interest to BF STURTEVANT arise out of this Defendant's business activities in the State of North Carolina.

9. Defendant, **CERTAINTEED CORPORATION** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. At all times material hereto, CERTAINTEED CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, plastic cement products. Plaintiffs' claims against CERTAINTEED CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

10. Defendant, **FOSTER WHEELER ENERGY CORPORATION** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, FOSTER WHEELER ENERGY CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, Foster Wheeler boilers and

4

distilling plants. Plaintiffs' claims against FOSTER WHEELER ENERGY CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

11. Defendant, **HONEYWELL INTERNATIONAL, INC.**, f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, Bendix salinity indicator products. Plaintiffs' claims against HONEYWELL INTERNATIONAL, INC., f/k/a ALLIED-PRODUCTS LIABILITY SIGNAL, INC., sued as successor-in-interest to BENDIX CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

12. Defendant, **METROPOLITAN LIFE INSURANCE COMPANY**, was and is a company incorporated under the laws of the State of New York with its principal place of business in New York. METROPOLITAN LIFE INSURANCE COMPANY has done and does business in the State of North Carolina. METROPOLITAN LIFE INSURANCE COMPANY is named as a conspiracy defendant.

13. Defendant, **PFIZER, INC.** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, PFIZER, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing talc products.

Plaintiffs' claims against PFIZER, INC. arise out of this Defendant's business activities in the State of North Carolina.

14. Defendant, **R.T. VANDERBILT HOLDING COMPANY, INC.**, sued individually and as successor-in-interest to R.T. VANDERBILT COMPANY, INC., was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Connecticut. At all times material hereto, R.T. VANDERBILT HOLDING COMPANY, INC., sued individually and as successor-in-interest to R.T. VANDERBILT COMPANY, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing talc products. Plaintiff's claims against R.T. VANDERBILT HOLDING COMPANY, INC., sued individually and as successor-in-interest to R.T. VANDERBILT COMPANY, INC. arise out of this Defendant's business activities in the State of North Carolina.

15. Defendant, **UNION CARBIDE CORPORATION** was and is a company incorporated under the laws of the State of New York with its principal place of business in Texas. At all times material hereto, UNION CARBIDE CORPORATION mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, raw asbestos fibers and asbestos-containing talc products. Plaintiff's claims against UNION CARBIDE CORPORATION arise out of this Defendant's business activities in the State of North Carolina.

16. Defendant, **VANDERBILT MINERALS, LLC**, f/k/a R.T. VANDERBILT COMPANY INC., individually and as successor-in-interest to INTERNATIONAL TALC CO., was and is a limited liability company incorporated is a corporation organized under the laws of

the State of Delaware with its principal place of business in Connecticut. At all times material hereto, VANDERBILT MINERALS, LLC, f/k/a R.T. VANDERBILT COMPANY INC., individually and as successor-in-interest to INTERNATIONAL TALC CO. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing talc products. Plaintiff's claims against VANDERBILT MINERALS, LLC, f/k/a R.T. VANDERBILT COMPANY INC., individually and as successor-in-interest to INTERNATIONAL TALC CO. arise out of this Defendant's business activities in the State of North Carolina.

17. Defendant, **VELAN VALVE CORP.** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Vermont. At all times material hereto, VELAN VALVE CORP. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Velan valves and steam traps. Plaintiff's claims against VELAN VALVE CORP. arise out of this Defendant's business activities in the State of North Carolina.

18. Defendant, **WEIR VALVES & CONTROLS USA, INC.**, individually and as successor-in-interest to ATWOOD & MORRILL CO., INC., was and is a company incorporated under the laws of the State of Massachusetts with its principal place of business in Massachusetts. At all times material hereto, WEIR VALVES & CONTROLS USA, INC., individually and as successor-in-interest to ATWOOD & MORRILL CO., INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing Atwood & Morrill valves. Plaintiff's claims against WEIR

VALVES & CONTROLS USA, INC., individually and as successor-in-interest to ATWOOD & MORRILL CO., INC. arise out of this Defendant's business activities in the State of North Carolina.

19. Defendant, **WHITTAKER, CLARK & DANIELS, INC.** was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey. At all times material hereto, WHITTAKER, CLARK & DANIELS, INC. mined, manufactured, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos and/or asbestos-containing products, materials, or equipment, including, but not limited to, asbestos-containing talc products. Plaintiff's claims against WHITTAKER, CLARK & DANIELS, INC. arise out of this Defendant's business activities in the State of North Carolina.

## BACKGROUND FACTS

20. Plaintiffs bring this action for monetary damages as a result of Plaintiff Everette L. Vanhoy contracting an asbestos-related disease.

21. Plaintiff was diagnosed with Mesothelioma on July 21, 2017.

22. Plaintiff's mesothelioma was caused by his exposure to asbestos-containing talc over the course of decades. Beginning in approximately 1969, Plaintiff Everette Vanhoy was exposed to asbestos-containing talc in hygiene products in Salisbury, NC. The Defendants identified above supplied the asbestos-containing talc and/or sold hygiene products containing asbestos-containing talc used by Plaintiff.

23. Plaintiff was also exposed to various asbestos-containing products while serving in the U.S. Navy as an Interior Communications Electrician (IC3) aboard the USS Olmsted (APA-188), from approximately January 1954 until January 1956. Aboard the USS Olmsted, Plaintiff worked with, or in close proximity to others who worked with, asbestos-containing

materials including but not limited to asbestos-containing equipment including the gyro compass, boiler feed water salinity and internal communications telephone system equipment and other asbestos-containing materials and equipment manufactured and/or sold by Defendants identified above.

24. Plaintiff was also exposed to various asbestos-containing products while working as a self-employed home builder in Salisbury, NC from approximately 1956 to 1969. Plaintiff worked with, or in close proximity to others who worked with, asbestos-containing materials including but not limited to asbestos-containing joint compound, plastic cement, and other asbestos-containing materials manufactured and/or sold by Defendants identified above.

### FIRST CAUSE OF ACTION
### DEFECTIVE DESIGN

25. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

26. At all material times, Defendants are or were miners, manufacturers, distributors, processors, importers, converters, compounders, and/or retailers of asbestos and/or asbestos-containing products, materials or equipment, and/or asbestos-containing talc, or, are otherwise jointly and severally liable due to their involvement in the underlying facts.

27. The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, certain asbestos and asbestos-containing materials, products or equipment, and/or asbestos-containing talc, to be placed in the stream of interstate commerce with the result of that said asbestos and asbestos-containing materials, products or equipment, and/or asbestos-containing talc, came into use by Plaintiff or by coworkers who were working with asbestos-containing materials in close proximity to Plaintiff.

9

28. Plaintiff worked with and/or was exposed to the asbestos and asbestos-containing materials, products or equipment, and/or asbestos-containing talc, mined, manufactured, processed, imported, converted, compounded, and/or sold by the Defendants, most or all of the exposure being within the State of North Carolina.

29. Plaintiff was exposed to Defendants' asbestos and asbestos-containing materials, products or equipment, and/or asbestos-containing talc, which exposure directly and proximately caused him to develop an illness known and designated as Mesothelioma.

30. Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture, and sell products that were not unreasonably dangerous or defective and/or a duty to warn the Plaintiff and foreseeable users of said products of the dangers and defects which the Defendants created, knew, or, within the exercise of reasonable care, should have known.

31. Defendants knew, or should have known, that persons working around asbestos-containing products in their employment, and/or using asbestos-containing talc products, would be exposed to asbestos in quantities that could cause mesothelioma.

32. Plaintiff sustained injuries caused by no fault of his own and which could not be avoided through the use of reasonable care. Plaintiff's development of an asbestos-related disease was directly and proximately caused by the negligence and carelessness of Defendants in that they manufactured, processed, sold, supplied or otherwise put said asbestos or asbestos-containing products, materials or equipment, and/or asbestos-containing talc, into the market and into the stream of interstate commerce, while they knew, or in the exercise of ordinary care should have known, that said products were deleterious, poisonous, cancer-causing and/or inherently dangerous and harmful to Plaintiff's body, lungs, respiratory system, skin, health, and general

well-being. Further, Defendants knew or in the exercise of reasonable care should have known that Plaintiff would not know of such danger to his health.

33. Plaintiff's illness and disability are the direct and proximate result of the negligence and carelessness of Defendants, jointly and severally, in that, even though the Defendants knew, or in the exercise of ordinary care should have known, that the asbestos and asbestos-containing materials, products or equipment, and asbestos-containing talc, were deleterious, poisonous, and highly harmful to Plaintiff's body, lungs, respiratory system, skin, and health.

34. Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing asbestos and/or asbestos-containing products, materials or equipment, and/or asbestos-containing talc, into the stream of commerce, knew, or in the exercise of reasonable care, should have known about the risks associated with their products. The products in question were defective at the time they left the control of the Defendants.

35. The relevant Defendants who were involved in manufacturing, designing and producing the asbestos-containing products and/or asbestos-containing talc herein had a duty to use reasonable care throughout the manufacturing process, including making sure the product is free of any potentially dangerous defect in manufacturing or design.

36. While non-asbestos alternative designs and formulations of the relevant products and equipment were available prior to when some or all of the Plaintiff's injurious exposure occurred, the relevant Defendants negligently failed to adopt a non-asbestos design and formulation during the pertinent times.

37. Under N.C. Gen. Stat. § 99B-6, the relevant Defendants are liable for inadequate design or formulation in that they qualify as manufacturers within the scope of the statute and they acted unreasonably in designing or formulating the product when there was a safer, practical, feasible, and otherwise reasonable alternative design or formulation.

38. During some or all of the pertinent times, asbestos-free product designs and formulations could have accomplished the same functions as the asbestos products.

39. Defendants were negligent and breached their duty of due care to Plaintiff by taking or failing to take the actions as previously alleged to avoid harm to the Plaintiff and other foreseeable users, in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, distribution of the asbestos and/or asbestos-containing products, materials or equipment and/or asbestos-containing talc, placed by Defendants in the stream of commerce.

40. The hazards posed by exposure to asbestos and/or asbestos-containing products, materials or equipment, and/or asbestos-containing talc, and the resulting injuries and damages to Plaintiff were reasonably foreseeable, or should have been reasonably foreseen by Defendants.

41. Defendants acted unreasonably by continuing to use a known cancer-causing product, to-wit: asbestos and/or asbestos-containing talc.

42. At the time the products left Defendants' control, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design.

43. As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, the Plaintiff developed Mesothelioma, as a consequence of which, through no fault of his own, he is severely injured, disabled and damaged.

44. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## SECOND CAUSE OF ACTION
## FAILURE TO WARN

45. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

46. Under N.C. Gen. Stat. § 99B-5, the relevant Defendants are liable for negligent failure to warn and inadequate warning or instruction, in that they were each a manufacturer or seller of a product who acted unreasonably in failing to provide such warning or instruction. The failure to provide adequate warning or instruction was a proximate cause of the harm for which damages are sought. At the time the relevant asbestos-containing products and/or asbestos-containing talc left the control of the relevant Defendant manufacturers or sellers, the products and/or talc, without an adequate warning or instruction, created an unreasonably dangerous condition that the manufacturer or seller knew, or in the exercise of ordinary care should have known, posed a substantial risk of harm to a reasonably foreseeable claimant.

47. In the alternative, after the relevant asbestos-containing products and/or asbestos-containing talc left the control of the relevant Defendant manufacturer or sellers, the manufacturers or sellers became aware of or in the exercise of ordinary care should have known that the products and/or talc posed a substantial risk of harm to a reasonably foreseeable user or consumer and failed to take reasonable steps to give adequate warning or instruction or to take other reasonable action under the circumstances.

48. The relevant Defendants breached their duties and were negligent in the following acts and/or omissions:

    (a) Failed to advise Plaintiff of the dangerous characteristics of their asbestos and/or asbestos-containing materials, products or equipment, and/or asbestos-containing talc;

(b) Failed or omitted to provide the Plaintiff with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos-containing materials, products or equipment, and/or asbestos-containing talc;

(c) Failed and omitted to place any warnings or sufficient warnings on their containers of said asbestos and asbestos-containing materials, products or equipment, and/or asbestos-containing talc, to warn the handlers of the dangers to health in coming in contact with said asbestos and asbestos-containing materials, products or equipment, and/or asbestos-containing talc;

(d) Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing said asbestos-containing materials, products or equipment, and/or asbestos-containing talc,;

(e) Inadequately warned, if, in fact, they warned at all, persons such as Plaintiff of the dangers to their health in coming in contact with and breathing said asbestos fibers from asbestos and/or asbestos-containing materials, products or equipment, and/or asbestos-containing talc;

(f) Did not recommend methods to reduce exposures;

(g) After discovering that the asbestos exposure caused a progressive lung disease, the Defendants did not inform the Plaintiff of the need for monitoring and periodic evaluations up to and including the filing of this complaint.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY

49. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

50. The Defendants impliedly warranted that said asbestos materials and/or asbestos-containing talc were of good and merchantable quality and fit for their intended use.

51. The implied warranty made by the Defendants that the asbestos and asbestos-containing materials, products, or equipment, and/or asbestos-containing talc, were of good and merchantable quality and for the particular intended use was breached and that certain harmful,

poisonous, and deleterious matter was given off into the atmosphere wherein the Plaintiff carried out his duties while working with or in the vicinity of asbestos and asbestos-containing materials, products, or equipment.

52. As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, Plaintiff developed an illness, to-wit: Mesothelioma.

53. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

## FOURTH CAUSE OF ACTION
## GROSS NEGLIGENCE; WILLFUL, WANTON, AND RECKLESS CONDUCT

54. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

55. Plaintiff and others in his position worked in close proximity to the asbestos and asbestos-related materials and/or asbestos-containing talc, used, sold or manufactured by the Defendants, and the exposure and hazard to each of them, in Plaintiff's presence, as well as others in his position, was known, or in the exercise of reasonable care should have been anticipated, by the Defendants, and each of them.

56. The Defendants have known or should have known for decades of medical and scientific data which clearly indicates that the products, asbestos and asbestos-containing products, and/or asbestos-containing talc, were hazardous to the health and safety of the Plaintiff and others in the Plaintiff's position, and prompted by pecuniary motives, the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public, and particularly the users, of said medical and scientific data, depriving them, therefore, of the opportunity of free choice as to whether or not to expose themselves to the

15

asbestos products of said Defendants. As a result, the Plaintiff has been severely damaged as is set forth below.

57. The Defendants intentionally and fraudulently continued to conceal the dangers of asbestos exposure for many decades, thus denying Plaintiff the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations, stop smoking, and avoiding further dust exposure. Specifically, Defendants' intentional and fraudulent conduct included the following acts and omissions:

> (a) failure to warn prior users when the Defendants had knowledge of the need for monitoring due to prior exposure;
>
> (b) failure to issue recall type letters to prior users;
>
> (c) frustrating the publication of articles and literature from the 1930's through at least 1976;
>
> (d) rejection by top management of advice of corporate officials to warn of the hazards of their asbestos products; such rejection being motivated by the possibility of adverse effects on profits; and
>
> (e) The intentional inadequacy of (and delay in the use of) the warnings on asbestos products.

58. The acts of the Defendants, and each of them, as hereinabove set forth were intentional and willful and done with willful disregard of the safety of Plaintiff and others similarly situated at a time when Defendants, and each of them, had knowledge, or should have had knowledge of the dangerous effect of asbestos and asbestos-containing materials, products or equipment, and/or asbestos-containing talc, upon the body of human beings, including Plaintiff arid others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce, for their own profit, this dangerous asbestos material and/or asbestos-containing talc with full knowledge that it was being used and

16

would be used in the future to the detriment of the health of Plaintiff and others similarly situated, and Plaintiff is thereby entitled to punitive damages.

59. Accordingly, as a result of the Defendants' conduct in which they acted in willful, wanton, gross negligence and in total disregard for the health and safety of the user or consumer, such as Plaintiff, Plaintiff therefore seeks exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, and in total disregard of the health and safety of the users and consumers of their products.

60. The Defendants' above-described recurring conduct, acts, omissions, negligence, and impropriety included aggravating factors giving rise to a claim of punitive damages under Chapter 1D of the North Carolina General Statutes.

61. Pursuant to N.C. Gen. Stat. § 1D-15(a), each Defendant is properly liable for punitive damages in this action in that Defendant is liable for compensatory damages and has committed one or more aggravating acts or omissions justifying an award of punitive damages, including without limitation, recurring acts of egregious and reckless behavior, and specific instances of willful and wanton conduct.

62. The recurring conduct, acts, omissions, negligence, and impropriety of the Defendants were willful, wanton, malicious, and in reckless disregard for the rights and interests of the Plaintiff and justify an award of punitive damages. Accordingly, Plaintiff demands judgment against Defendant for punitive damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### CONSPIRACY
### (Against Defendant METROPOLITAN LIFE INSURANCE COMPANY)

63. Defendant METROPOLITAN LIFE INSURANCE COMPANY rendered substantial aid and assistance to the manufacturers of asbestos-containing products and/or equipment to which Plaintiff Everette L. Vanhoy was exposed, and such assistance by

17

Case 1:18-cv-00090-UA-JLW   Document 1   Filed 02/09/18   Page 17 of 20

METROPOLITAN LIFE INSURANCE COMPANY aided and abetted the negligence and the marketing of unreasonably dangerous asbestos-containing products and/or equipment by such manufacturers which proximately caused Plaintiff Everette L. Vanhoy's illness, injuries, and/or disabilities.

64. In both conducting tests and in publishing their alleged results, METROPOLITAN LIFE INSURANCE COMPANY failed to exercise reasonable care to conduct or publish complete, adequate and accurate tests of the health effects of asbestos. METROPOLITAN LIFE INSURANCE COMPANY also caused to be published intentionally false, misleading, inaccurate and deceptive information about the health effects of asbestos exposure.

65. Plaintiff Everette L. Vanhoy unwittingly but justifiably relied upon the thoroughness of METROPOLITAN LIFE INSURANCE COMPANY's tests and information dissemination, the results of which METROPOLITAN LIFE INSURANCE COMPANY published in leading medical journals.

66. As a direct and proximate contributing result of METROPOLITAN LIFE INSURANCE COMPANY's failures to conduct or accurately publish adequate tests or disseminate accurate and truthful information, after undertaking to do so; (i) the risk of harm to Plaintiff Everette L. Vanhoy from asbestos exposure was increased, and (ii) Everette L. Vanhoy suffered the injuries previously described.

67. In failing to test fully and adequately for the adverse health effects from exposure to asbestos; in delaying the publication of such results; in falsely editing such results as were obtained; in suppressing relevant medical inquiry and knowledge about those hazards to promote the sale and distribution of asbestos as a harmless product; and in collaborating with the other Defendants materially to understate the hazards of asbestos exposure, all for their own profit and gain, METROPOLITAN LIFE INSURANCE COMPANY acted willfully, wantonly, and with

malice in calculated disregard for the welfare of the general public, including Plaintiff Everette L. Vanhoy. Plaintiff seeks compensatory and punitive damages against METROPOLITAN LIFE INSURANCE COMPANY as a result.

## DAMAGES

68. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

69. As a result of the development of asbestos related diseases, Plaintiff has suffered and sustained very serious injuries to his person, to wit: mesothelioma.

70. Plaintiff has further suffered great pain, extreme nervousness, and mental anguish as a direct result of the aforesaid injuries.

71. Plaintiff verily believes that his injuries and illnesses are recurrent in nature and that he will be forced to suffer same for the remainder of his life; that his enjoyment of life has been greatly impaired; that he has been forced to remove himself from his job due to his poor health resulting in substantial lost wages and loss of earning capacity; and further, that his expected life span has been greatly shortened.

72. Plaintiff alleges that as a result of the aforesaid illnesses, he has been forced to incur large amounts of medical expenses by way of doctor and drug bills and verily believes that he will be forced to incur additional expenses in an effort to treat his illnesses as aforesaid alleged.

WHEREFORE, the Plaintiff verily believes he is entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, failure to warn and other breaches of duty as alleged herein proximately caused by the fault of the Defendants, lost wages, special damages, and punitive damages in an amount to be determined by the trier of fact, plus the costs of this action.

19

Case 1:18-cv-00090-UA-JLW   Document 1   Filed 02/09/18   Page 19 of 20

## JURY DEMAND

Plaintiff respectfully requests a trial by jury of all claims so triable.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that this Court:

A. Award the Plaintiff compensatory damages, in an amount to be determined at trial;

B. Award the Plaintiff punitive damages;

C. Award the Plaintiff pre-judgment and post-judgment interest and any other costs, expenses or fees to which the Plaintiff may be entitled by law; and

D. Award the Plaintiff such other and further relief as is just and proper.

**A JURY IS RESPECTFULLY DEMANDED TO TRY THESE ISSUES.**

Respectfully submitted,

*/s/ William M. Graham*
William M. Graham (NC Bar #17972)
WALLACE & GRAHAM, P.A.
525 North Main Street
Salisbury, NC 28144
T: (704) 633-5244
F: (704) 633-9434
E-Mail: bgraham@wallacegraham.com

ATTORNEYS FOR PLAINTIFFS